UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SUE MCLEAN-LAPRADE and
DANNY LAPRADE,

                Plaintiffs,

       -against-                              7:12-CV-1774 (LEK/ATB)

HSBC,[1]

                Defendant.

_____

**MEMORANDUM-DECISION and ORDER**

**I.    INTRODUCTION**

Presently before the Court is Defendant HSBC's ("Defendant") Motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 8 ("Motion") at 1.[2] Plaintiffs Sue McLean-Laprade and Danny Laprade (collectively, "Plaintiffs") bring claims under the Truth in Lending Act ("TILA"), New York State General Business Law ("GBL"), the Real Estate Settlement Procedures Act ("RESPA"), New York Banking Law, the Fair Credit Reporting Act ("FCRA"), and the Fair Debt Collection Practices Act ("FDCPA"). See generally Dkt. No. 1-1 at 4-16 ("Complaint").[3] Defendant seeks dismissal of the Complaint in its entirety, with prejudice. Mot. at

---

[1] Defendant HSBC Mortgage Services Inc. notes that it is incorrectly sued in the present action as "HSBC." Dkt. No. 8-1 ("Defendant's Memorandum") at 1. The Clerk of the Court is directed to amend the caption accordingly.

[2] Page numbers correspond to those electronically affixed to the top of the document by the Clerk of the Court.

[3] Page numbers correspond to those electronically affixed to the top of the document by the Clerk of the Court.

1. For the following reasons, Defendant's Motion is granted.[4]

## II.     BACKGROUND

Plaintiffs brought the present action in the Supreme Court of the State of New York, County of St. Lawrence, where Plaintiffs reside. Compl. ¶ 1, at 4.[5] On December 3, 2013, the matter was removed to the U.S. District Court for the Northern District of New York pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446. Dkt. No. 1-1 at 1. The Complaint, dated October 17, 2012, alleges that Plaintiffs refinanced their home in 2005 with Home Funds Direct, Defendant's predecessor in interest, having executed a note and mortgage to secure the debt in the amount of $99,000.00. Compl. ¶ 4, at 4. Plaintiffs also allege that it is unclear when Defendant acquired the subject loan, and that, while Defendant claims to be entitled to receive payment from Plaintiffs, the note is unendorsed and Defendant, having admitted that the mortgage was never assigned from the original lender, is therefore not so entitled. Id. ¶¶ 6-8, at 4-5. Plaintiffs further contend that the loan payment history reflects that Defendant, in its capacity as servicer of the subject loan, has misapplied funds received from Plaintiffs, engaged in deceptive acts and practices, and failed to notify Plaintiffs of the transfer of servicing rights of their loan. Id. ¶ 9, at 5; id. ¶¶ 2-5, at 11. Plaintiffs also allege that Defendant made or arranged a high-cost home loan without regard for Plaintiffs' ability to repay, "reported false, negative information on Plaintiffs' credit report," and failed to "validate the subject debt." Id. ¶ 12, at 14; id. ¶ 15, at 15.

---

[4] The Court acknowledges that Plaintiffs' Memorandum of law in opposition to Defendant's Motion was filed two days late, but notes that this has no bearing on the Court's decision, as all of Plaintiffs' claims either are untimely or fail to state a claim with or without the Memorandum. See Dkt. No. 11 ("Plaintiffs' Memorandum").

[5] The numbering of the paragraphs in the Complaint is not linear; therefore, the Court refers to both the paragraph number and the page number when necessary to avoid confusion.

Plaintiffs' causes of action include claims for breach of contract and violations of TILA under Regulation Z ("Reg Z"), predatory lending and deceptive trade practices under GBL § 349, and failure to notify of transfer/assignment under RESPA (specifically, 12 U.S.C. § 2605). See generally id. Plaintiffs also bring claims for violations of New York Banking Law § 6-L, title 3 § 41.3(B) of the Compilation of Codes, Rules, and Regulations of the State of New York, and violations of the FCRA and FDCPA. See id. Finally, Plaintiffs bring an additional claim for violations of TILA pursuant to 15 U.S.C. § 1641(g). See id.

### III. LEGAL STANDARD

Rule 8(a) of the Federal Rules of Civil Procedure provides that

> [a] pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Moreover, Rule 12(b) sets forth defenses that a party may assert by motion. FED. R. CIV. P. 12(b). A party may move a court pursuant to Rule 12(b)(6) to dismiss an action for "failure to state a claim upon which relief can be granted." Id. R. 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570); see also FED. R. CIV. P. 12(b)(6). "[A] court must accept all well-pleaded factual allegations made by the non-moving party as true and 'draw all inferences . . . the non-moving party's favor,'" Brown v. Kopek, No. 11-CV-0016, 2011

3

WL 3737921, at *3 (N.D.N.Y. Aug. 24, 2011) (Kahn, J.) (quoting In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007) (Sotomayor, J.)), but "[a]ny legal conclusions, deductions, or opinions couched as factual allegations are not accorded a presumption of truthfulness." Id.

## IV. DISCUSSION

### A. First Cause of Action: Breach of Contract and Violations of TILA and REG Z

The line between Plaintiffs' TILA and breach-of-contract claims is quite blurred, and these claims, while perhaps not mutually exclusive,[6] must be separated in this case. Plaintiffs' first cause of action, then, must be read as two causes of action: one for breach of contract and another for TILA violations. For the following reasons, the TILA claims within Plaintiffs' first and seventh causes of action (and any related Reg Z claims) are untimely or fail state a claim and accordingly are dismissed with prejudice. Pls.' Mem. at 11.

*1. Plaintiffs' TILA Claims Are Time-Barred*

According to Plaintiffs, "Defendant contends that Plaintiff is barred from bringing a cause of action for breach of contract because the Statute of Limitations under TILA is only one year," whereas "the Statute of Limitations for breach of contract is six years." Id. This misinterpretation of Defendant's contention is easily corrected. Defendant does not argue that Plaintiffs' *breach-of-contract* claim is barred according to TILA's one-year statute of limitations; rather, Defendant asserts that Plaintiffs' *TILA claims* are barred by the one-year statute of limitations imposed by *TILA*. See Def.'s Mem. at 5-7. The Court agrees.

---

[6] See Hubbard v. Fidelity Federal Bank, 91 F.3d 75, 77 n.3 (9th Cir. 1996) (noting that TILA and breach of contract claims were not mutually exclusive where an independent basis existed in support of each claim).

4

"Congress enacted the Truth in Lending Act (TILA), 82 Stat. 146, in order to promote the 'informed use of credit' by consumers." Household Credit Servs. Inc. v. Pfennig, 541 U.S. 232, 235 (2004); see also 15 U.S.C. § 1601(a). Moreover, "TILA is a remedial act . . . and, as such, its provisions are to be construed liberally in favor of consumers." Belmont v. Assoc. Nat'l Bank (Del.), 119 F. Supp. 2d 149, 159 (E.D.N.Y. 2000) (citation omitted) (citing 15 U.S.C. § 1601(a)).

Nevertheless, private actions for damages based on TILA violations are subject to a one-year statute of limitations. Grimes v. Fremont General Corp., 785 F. Supp. 2d 269, 285 (S.D.N.Y. 2011) (citing 15 U.S.C. § 1640(e); Johnson v. Scala, No. 05-CV-5529, 2007 WL 2852758, at *3 (S.D.N.Y. Oct. 1, 2007)). Moreover, "[i]t is well-settled law that in closed-end credit transactions, like the one at issue, the date of the occurrence of violation is no later than the date the plaintiff enters the loan agreement or, possibly, when defendant performs by transmitting the funds to plaintiffs." Cardiello v. Money Store, Inc., No. 00-CIV-7332, 2001 WL 604007, at *3 (S.D.N.Y. June 1, 2001) (internal quotation marks omitted). The statute of limitations for TILA claims therefore began to run in October 2005 when the loan originated and funds were transmitted. See Compl. ¶¶ 4-5, at 4; Dkt. No. 1-1 at 31. The alleged misapplications of payments in violation of TILA occurred between October 3, 2006, and September 30, 2008. Compl. ¶ 18, at 7-8. The Complaint was not filed until October 25, 2012. See Dkt. No. 1-1 at 1. Thus, the most recent of the alleged TILA violations occurred more than three years prior to the filing of the Complaint, and is well outside of the one-year statutory period.

In an effort to save the first and seventh causes of action from being time-barred by invoking the doctrine of equitable tolling, Plaintiffs note that "those acts perpetrated by Defendant not only constitute breach of contract but also fraud . . . and the statute of limitations for fraud is two years

5

after discovery of the harmful acts (which in this case is June 06, 2012.)." Pls.' Mem. at 12. While "[c]ourts have held that equitable tolling is appropriate under TILA if there are allegations of concealment and fraud," McAnaney v. Astoria Fin. Corp., 357 F. Supp. 2d 578, 587 (E.D.N.Y. 2005) (citing Weil v. Long Island Sav. Bank, FSB, 77 F. Supp. 2d 313, 322 (E.D.N.Y. 1999)), courts have also held that "in a TILA or RESPA case, equitable tolling will not be applied unless the plaintiff alleges affirmative acts of concealment by the defendant over and above any alleged non-disclosure that forms the basis of her claims." Futterman v. Wash. Mut. Bank, FA, No. 10-CV-01002, 2010 WL 5067650, at *2 (N.D.N.Y. Dec. 6, 2010) (Kahn, J.) (citing Zamito v. Patrick Pontiac, Inc., No. 07-CV-6241, 2008 WL 3930502, at *4 (W.D.N.Y. Aug. 21, 2008)). The Court cannot discern any such allegations within the pleadings. Thus, Plaintiff's TILA claims are untimely, and accordingly are dismissed with prejudice.

Plaintiffs also allege that Defendant violated 12 C.F.R. § 226.36(c). Compl. ¶ 16, at 7. "[T]he provisions of Part 226 of Title 12 of the C.F.R. are commonly known as Regulation Z." Murphy v. Empire of Am, FSA, 746 F.2d 931, 933 (2d Cir. 1984). "Regulation Z . . . is issued by the Board of Governors of the Federal Reserve System to implement the federal Truth in Lending Act." 12 C.F.R. § 226.1 (2013). Any Reg Z claims therefore must be subject to the TILA statute of limitations. Thus, any such claims are also untimely.

### 2. *Plaintiffs Do Not State a Claim for Breach of Contract*

Plaintiffs' TILA claims are cloaked in breach-of-contract garb, yet these are two separate and distinct causes of action. As such, the breach-of-contract claim must be analyzed in isolation from the TILA claims. The first issue is whether Plaintiffs have set forth a legally feasible claim for breach of contract. It is well settled that

6

> [i]n order to recover from a defendant for breach of contract, a plaintiff must prove, by a preponderance of the evidence, (1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach.

Diesel Props S.R.L. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011) (citing Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004); Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)). In New York, "[t]he damages must flow directly and naturally from the breach of the contract, and they must be certain, both in their nature and in respect of the cause from which they proceeded." Witherbee v. Meyer, 80 N.E.58, 60 (N.Y. 1898) cited in Kenford Co. v. County of Erie, 493 N.E.2d, 234, 235 (N.Y. 1986).

In the present action, Plaintiffs have failed to plead damages caused by Defendant's breach. While the Complaint recites several alleged statutory violations regarding the application of Plaintiffs' mortgage payments, it is unclear that these violations constitute a breach of contract, and in any event, Plaintiffs fail to allege that any damages actually flowed from the breach if one did indeed occur.

More specifically, Plaintiffs seek $92,000.00 in damages, plus attorneys' fees, apparently based on a calculation of damages according to 15 U.S.C. § 1640(a)(2)(A). Compl. at 9. Plaintiffs concede that they have not established actual damages resulting from the breach, explaining that "[t]he reason Plaintiff[s] use . . . TILA (15 U.S.C. § 1601) and Dodd Frank (Dodd Frank Act § 1464) standards is to avoid proving actual damages, since those statutes deem the damages as statutory." Pls.' Mem. at 12. However, Plaintiffs do not cite to any authority that would allow them to invoke statutory damages for their breach-of-contract claim. Nor can the Court find any such authority.

7

"Under New York law, the normal measure of damages for breach of contract is expectation damages—the amount necessary to put the aggrieved party in as good a position as it would have been had the contract been fully performed." McKinley Allsopp, Inc. v. Jetborne Int'l, Inc., No. 89 Civ. 1489, 1990 WL 138959, at *8 (S.D.N.Y. Sept. 19, 1990) (citing Proteus Books Ltd. v. Cherry Lane Music Co., 873 F.2d 502, 513 (2d Cir. 1989); S & K Sales Co. v. Nike, Inc., 816 F.2d 843, 852 (2d Cir. 1989); Kenford Co., 493 N.E.2d at 235).

There are exceptions to this general rule. For example, "'restitution damages' enable the innocent party to recover any benefit conferred by it upon the breaching party as a result of the existence of the contract between them," and "'reliance damages' enable the innocent party to recover identifiable costs incurred in reliance on the breaching party's promise, where the breaching party could reasonably foresee that they would be incurred." Id. at *8. Plaintiffs do not seek damages under any of these theories of recovery. Plaintiffs' request for relief in the form of statutory damages veers, without explanation or support, far astray from the well-settled contract law of New York.

In addition, to impose statutory damages for a breach of contract would be to impose a penalty on the breaching party, whereas "[t]he general rule in New York is that punitive damages are not available in breach of contract actions." Bruen v. Savage, No. 92 Civ. 0586, 1994 WL 97111, at *1 (S.D.N.Y. Mar. 23, 1994) (collecting cases). Therefore, Plaintiffs' prayer for relief in the form of damages under TILA ignores the proper measure of damages for a breach-of-contract claim and is not permissible under New York contract law. Nor do Plaintiffs satisfy the requirement that damages be pleaded to state a claim for breach of contract. The Court finds that Plaintiffs have failed to state a claim for breach of contract, and such claim is therefore dismissed.

## B. Second Cause of Action: New York GBL § 349

Plaintiffs' second cause of action alleges deceptive acts and practices under New York GBL § 349. Specifically, Plaintiffs allege that the Truth in Lending Disclosure Statement reflects a higher interest rate than the note, resulting in significantly higher finance charges. Compl. ¶ 25, at 9-10. Plaintiffs additionally contend that the "loan was designed to fail" and "was born dead," and that "the original lender . . . negligently extended this loan to borrowers without regard to borrowers' capacity to repay" based on the lender's knowledge that the monthly payments represented a significant percentage of Plaintiffs' income. Id. ¶¶ 26-27, at 10. For the following reasons, Plaintiffs' second cause of action is dismissed with prejudice.

GBL § 349 provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. GEN. BUS. LAW § 349(a). "Section 349 has a three-year statute of limitations, [which] 'accrues when plaintiff becomes injured by the prohibited deceptive act or practice.'" Morson v. Kreindler & Kreindler, LLP, 814 F. Supp. 2d 220, 228 (E.D.N.Y. 2011) (citing N.Y. C.P.L.R. § 214(2); Parejas v. GE Capital Servs., No. 10-CV-3348, 2011 WL 2635778, at *3 (E.D.N.Y. July 5, 2011)). As such, Plaintiffs' claims have been time-barred since October 2008. See, e.g., Compl. ¶ 24, at 9 ("The note was signed on October 25, 2005 . . . , while the mortgage (which is supposed to secure the note) was born two days before, to wit October 26, 2005.").

However, "equitable tolling is available in cases of fraudulent concealment." M & T Mortg. Corp., 323 F. Supp. 2d 405, 411 (E.D.N.Y. 2004) (citing Weil, 77 F. Supp. 2d at 324). More specifically, "[i]n New York, equitable tolling is applicable where: (1) the defendant has wrongfully deceived or misled the plaintiff in order to conceal a cause of action, and (2) the plaintiff's failure to

9

commence the action within the statutory period is not due to lack of diligence on her part."
Council v. Better Homes Depot, Inc., No. 04-CV-5620, 2006 WL 2376381, at *11 (E.D.N.Y. Aug. 16, 2006) (citing Gleason v. Spota, N.Y.S.2d 297 (App. Div. 1993); Ramsay v. Imogene Bassett Hosp., 495 N.Y.S.2d 282 (App. Div. 1985)).

Furthermore, courts have held that "[t]o make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 647 N.E.2d 741, 745 (N.Y. 1995)). In addition, "[p]rivate contractual disputes are usually not within the statute because they are 'unique to the parties.'" Harary v. Allstate Ins. Co., 983 F. Supp. 95, 98 (E.D.N.Y. 1997) (citing Oswego Laborers' Local 214 Pension Fund, 647 N.E.2d at 745). Therefore, a plaintiff must show that the impact of the alleged deceptive practices extends beyond the parties involved and "must demonstrate that the acts or practices have a broader impact on consumers at large." Id.

Plaintiffs fail to establish that they were wrongfully deceived or misled by Defendant for the purpose of concealing a cause of action. Nothing in Plaintiffs' pleadings could be interpreted as supporting such a conclusion. Plaintiffs may not, therefore, invoke equitable tolling to save their claim from being time-barred. Moreover, Plaintiffs' allegations concern the origination of the loan; however, Plaintiffs also concede that Defendant is not the original lender. Compl. ¶¶ 25-29, at 9-11. Thus, even if Plaintiffs had made out a prima facie case under GBL § 349, they do not explain how the second cause of action in any way implicates the named Defendant. Finally, the present action involves a private contractual dispute that is unique to the parties involved. Plaintiffs have

not shown that Defendant's allegedly deceptive acts were directed at consumers generally or had a broad impact on consumers at large. Therefore, Plaintiffs have failed to state a legally feasible claim for which relief can be granted under GBL § 349. Plaintiffs' second cause of action therefore is dismissed with prejudice.

### C. Third Cause of Action: Failure to Notify of Transfer/Assignment

Plaintiffs allege in their third cause of action that Defendant failed to timely notify Plaintiffs of the transfer of their mortgage in violation of 12 U.S.C. § 2605. Compl. ¶¶ 2-4, at 11. This cause of action likewise is time-barred and accordingly is dismissed.

The statute of limitations for actions under § 2605 is three years from the date of the occurrence of the violation. 12 U.S.C. § 2605. Here, the notice of transfer is dated January 17, 2006, and indicates an effective date of transfer of January 21, 2006. Dkt. No. 8-7 at 6-7.[7] Therefore, any violation would have occurred in 2006, more than six years prior to the filing of the present action.

Once again, however, Plaintiffs attempt to transform this claim into a breach-of-contract claim by asserting that "[i]t is the contract itself . . . that mandates Defendant to furnish such notices; however, such notice was never sent." Pls.' Mem. at 13. Plaintiffs argue that "[a]s such, there is no statute of limitations triggered; and if it is one statute of limitations, it will be for two years after the fraud was uncovered to Plaintiff [sic] (which in this case is June 06, 2012.)." Id.

If this claim is actually one for breach of contract, the applicable statute of limitations in New York is six years. N.Y. C.P.L.R. § 213(2). The complaint was filed in October 2012, but the

---

[7] Page numbers correspond to those electronically affixed to the top of the document by the Clerk of the Court.

11

alleged breach would have occurred with the transfer over six years prior in January 2006. Thus, a breach of contract claim would still be untimely. Plaintiffs' attempt to cast this as a fraud claim also fails because the pleadings do not meet the heightened pleading standard for fraud claims required by Rule 9 of the Federal Rules of Civil Procedure. See FED. R. CIV. P. 9(B) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Plaintiffs' third cause of action is untimely and accordingly is dismissed with prejudice.

### D. Fourth Cause of Action: New York Banking Law § 6-L

Plaintiffs' fourth cause of action alleges that "the original lender induced Plaintiffs to enter into a mortgage agreement and executed a security instrument without verifying and/or disregarding Plaintiffs' income and ability to pay the obligation set forth in the Note/Mortgage." Compl. ¶ 7 at 12. Plaintiffs allege that this amounts to a violation of New York Banking Law § 6-L, pointing to its implementing regulations, specifically title 3, § 41.3(B) of the Compilation of Codes, Rules, and Regulations of the State of New York. Id. For the following reasons, Plaintiffs' fourth cause of action is dismissed.

#### 1. *Defendant Is Entitled to a Rebuttable Presumption*

In support of their argument, Plaintiffs cite portions of title 3, § 41.3(B) of the Compilation of Codes, Rules, and Regulations of the State of New York, which provides that

> [a] lender or mortgage broker may not make or arrange a high cost home loan unless the lender reasonably believes at the time the loan is consummated that the borrower or the borrowers . . . will be able to make the scheduled payments to repay the obligation . . . .

N.Y. COMP. CODES R. & REGS. tit. 3, § 41.3(B). Furthermore,

> [a] lender shall benefit from a rebuttable presumption that a borrower is able to make the scheduled payments to repay the obligation, if, at the time the high cost home loan is consummated, or at the time of the first rate adjustment in the case of a lower

12

introductory interest rate, the borrower's scheduled monthly payments do not exceed 50 percent of the borrower's monthly gross income . . . and the lender, in making such high cost home loan, follows the residual income guidelines pursuant to section 36.4337(e) of title 38 of the Code of Federal Regulations.

Id.[8]

In the instant action, Plaintiffs' monthly income, according to the Complaint, was $2,921.39 at the time the loan was consummated. Compl. ¶ 31, at 13. Initially, "the mortgage and insurance payment was calculated in the amount of $1,250.00." Id. Plaintiffs state that this represented 42% of borrowers' income,[9] but this is less than the threshold set forth in New York Banking Law § 6-L.

Moreover, Plaintiffs assert that "the original lender knew at the time of closing that the mortgage payments would be increased after the first year, to $1,436.73." Id. Here, Plaintiffs state that this reflects 50% of borrowers' monthly income. Id. In fact, the monthly payments after the first rate adjustment represented 49.18% of borrowers' monthly income.[10] However, even were the payments to equal 50% of Plaintiffs' monthly income as indicated in the Complaint, Defendant would still be entitled to the rebuttable presumption that Plaintiffs were able to make the scheduled payments, because Plaintiffs have not alleged that the amount of the scheduled payments *exceeded* 50% of their monthly income, nor have they alleged that the residual income guidelines of § 36.4337(e) of title 38 of the Code of Federal Regulations were not followed.

### 2. Plaintiffs' Fourth Cause of Action is Time-Barred

The provisions to which Plaintiffs cite apply only to "high cost home loan[s]." N.Y.

---

[8] See also N.Y. BANKING LAW § 6-L(2)(k).

[9] $1,250.00 is 42.79% of $2,921.39.

[10] $1,436.73.00 is 49.18% of $2,921.39.

13

BANKING LAW § 6-L(6); N.Y. COMP. CODES R. & REGS. tit. 3, § 41.3(B). Assuming that the subject loan does qualify as a such a loan (and it is not clear that it does), the statute provides that "[a] private action against the lender or mortgage broker pursuant to this section must be commenced within six years of origination." N.Y. BANKING LAW § 6-L(4)(b)(6). The subject loan originated in 2005, more than eight years prior to the filing of the Complaint. See Compl. Therefore, the Court need not determine whether the loan is a "high cost home loan" as the claim is untimely under any light. Plaintiffs' fourth cause of action therefore is dismissed with prejudice.

*3. Regulation Z*

Plaintiffs allege that Defendant violated 12 C.F.R. § 226.34(a)(4). Compl. ¶ 8, at 12. Reg Z is the regulatory vehicle through which TILA is implemented. See 12 C.F.R. § 226.1. As set forth *supra*, Plaintiffs' TILA claims are time-barred. See supra Part IV.A. Thus, any claims based on Reg Z are time-barred as well. In addition, Plaintiffs' New York Banking Law claim is a state-law claim, and it is unclear why Plaintiffs cite to Reg Z in support of it. To the extent that it can be treated as its own claim, Plaintiffs' allegations of violations of Reg Z are untimely and therefore are dismissed with prejudice.

**E. Fifth Cause of Action: FCRA**

Plaintiffs' fifth cause of action alleges that Defendant "repeatedly reported false, negative information on Plaintiffs' credit report in violation of the federal Fair Credit Reporting Act causing Plaintiff to suffer damages." Compl. ¶ 12, at 14. As explained below, the Court finds that this claim must be dismissed.

"The Fair Credit Reporting Act has as one of its purposes to 'protect consumer privacy.'" United States v. Bormes, 133 S. Ct. 12, 15 (2012) (quoting Safeco Ins. Co. of Am. v. Burr, 551 U.S.

14

47, 52 (2007)). For the purposes of the FCRA and in light of Plaintiffs' allegations, Defendant can best be described as a "furnisher" of information. The section of the FCRA pertaining to furnishers of information is 15 U.S.C. § 1681s-2(a). Courts have held that "there is no private cause of action under Section 1681s-2(a)," the enforcement of which is limited "to government agencies and officials." 15 U.S.C. § 1681s-2; O'Diah v. New York City, No. 02 Civ. 274, 2003 WL 21997748, at *3 (S.D.N.Y. Aug. 22, 2003); see also Redhead v. Winston & Winston, P.C., No. 01 Civ. 11475, 2002 WL 31106934, at *4 (S.D.N.Y. Sept. 20, 2002) (collecting cases). Therefore, Plaintiffs' FCRA claim is dismissed with prejudice.

**F. Sixth Cause of Action: FDCPA**

Plaintiffs' sixth cause of action is based on the FDCPA. See Compl. ¶ 14, at 14. Plaintiffs assert that "[a] validation of debt letter has to be sent to Plaintiffs within five days of initial communication allowing them 30 days to dispute the debt and/or its accuracy, under the Fair Debt Collection Practices Act (15 U.S.C. 1692)" and that Defendant "did not validate the subject debt." Compl. ¶¶ 14-15, at 14-15. Defendant contends that Plaintiffs' FDCPA claim is time-barred and fails as a matter of law. Defs.' Mem. at 21-23. The Court agrees.

*1. The FDCPA Does Not Apply to Creditors Collecting Their Own Debts*

Congress, acting pursuant to its Commerce Clause power, enacted the FDCPA to address abusive debt-collection practices in response to the apparent inadequacy of previous laws and procedures for redress with the belief that effective, nonabusive collection methods were available to collectors of debts. See 15 U.S.C. § 1692(a)-(e). The purpose was "to eliminate abusive . . . practices by debt collectors, to insure that those . . . who refrain from using abusive debt collection

15

practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." Id. § 1692(e).

Under the FDCPA, a debt collector is

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

Id. § 1692a(6). If Defendant is the owner of the note and mortgage, Defendant is not a debt collector, but is best characterized as a creditor, statutorily defined as "any person who offers or extends credit creating a debt or to whom a debt is owed." Dkt. No. 8-7 at 1, 6; 15 U.S.C. § 1692a(4). Notably, "the statute does not apply to creditors collecting their own debts." Backuswalcott v. Common Ground Cmty. HDFC, Inc., 104 F. Supp. 2d 363, 366 (S.D.N.Y. 2000); Williams v. Citibank, N.A., 565 F. Supp. 2d 523, 530 (S.D.N.Y. 2008) (citing 15 U.S.C. § 1692a(6)(B)); Doherty v. Citibank (S.D.) N.A., 375 F. Supp. 2d 158, 162 (E.D.N.Y. 2005) ("[T]he FDCPA expressly limits its application to debt collectors, not creditors."). And while the term "debt collector" includes "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts," 15 U.S.C. § 1692a(6), Plaintiffs do not allege that Defendant used another name at any time. Therefore, if Defendant is the owner of the note and mortgage, the FDCPA does not apply to it. The next step, then, is to determine whether this is indeed the case.

### 2. *A Presumption of Truth*

While Plaintiffs' FDCPA claim simply states that Defendant is the "servicer for the owner," Plaintiffs also allege in their second cause of action that Defendant is "just the master servicer but

16

not the owner of the note" and is "posing as the owner of the loan." Compl. ¶¶ 28-29, at 10; id. ¶ 15, at 15. At the same time, Plaintiffs appear to acknowledge that Defendant is the owner of the loan in other parts of the Complaint. See id. ¶ 2, at 11 ("Since the original lender transferred this loan to Defendant, there is no proof that Defendant in fact notified Plaintiff of the transfer of the loan."); see also id. ¶ 17, at 15 ("Since the creditors have changed, the new buyer should have notified of the transfer of this loan *within 30 days*."). Taking the facts in the light most favorable to Plaintiffs in the face of Defendant's Motion to dismiss, see Brown, 2011 WL 3737921, at *3, the Court will accept that Defendant is not the owner of the note and mortgage and is instead a servicer and thus subject to the FDCPA.

### *3. The Timeliness of Plaintiffs' FDCPA Claim Cannot be Determined at this Time*

A claim arising under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Absent a showing of extraordinary circumstances that prevented a plaintiff from timely bringing an action, or allegations that a defendant has concealed its wrongdoing from a plaintiff, "the latest date upon which the one year period begins to run is the date when a plaintiff receives an allegedly unlawful communication." Somin v. Total Cmty.Mgmt. Corp., 494 F. Supp. 2d 153, 158-59 (E.D.N.Y. 2007) (citations omitted).

In this case, the alleged violation would have occurred, if at all, five days after receipt by Plaintiffs of the initial communication from Defendant. Ehrich v. RJM Acquisitions LLC, No. 09 Civ. 2696, 2009 WL 4545179, at *2 (E.D.N.Y. Dec. 4, 2009) ("Thus, the alleged violation of the notice provision was complete . . . five days after receipt of the initial communication."). However, Plaintiffs do not specify the date of initial communication. Thus, Plaintiffs' sixth cause of action is insufficiently pleaded, and as a result it is impossible to determine the timeliness of Plaintiffs'

17

FDCPA claim at this time. Plaintiffs' sixth cause of action therefore is dismissed without prejudice, with leave to amend the Complaint to address this deficiency.

### G. Seventh Cause of Action

Plaintiffs' seventh cause of action alleges an additional violation of TILA. Compl. ¶ 17, at 15. As set forth *supra*, Plaintiffs' TILA claims are time-barred and dismissed with prejudice.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion (Dkt. No. 8) to dismiss is **GRANTED**; and it is further

**ORDERED**, that Plaintiffs' Complaint (Dkt. No. 1-1 at 4-16) is **DISMISSED in its entirety** consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that Plaintiffs' TILA claims are **DISMISSED with prejudice** as they are untimely under the applicable statutes of limitations; and it is further

**ORDERED**, that Plaintiffs' breach-of-contract claim is **DISMISSED without prejudice**; and it is further

**ORDERED**, that Plaintiffs' second, third, fourth, fifth, and seventh causes of action are **DISMISSED with prejudice** as they either are untimely or fail to state a claim; and it is further

**ORDERED**, that Plaintiffs' sixth cause of action is **DISMISSED without prejudice**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all the parties.

**IT IS SO ORDERED**.

DATED:  July 30, 2013
        Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge